# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | | |
|---|---|---|
| ZEL NORMAN, | ) | Case No.: 2:07-cv-01411-RLH-LRL |
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| L. GILBERT et al., | ) | (Motion for Summary Judgment–#54; Motion to File Late Pleading–#61) |
| Defendants. | ) | |

Before the Court is Defendants L. Gilbert, S. Ferguson, R. Sandoval, and R. Radar, S. Shrum, and the Las Vegas Metropolitan Police Department's ("Metro") **Motion for Summary Judgment** (#54), filed April 24, 2009. Also before the Court is Plaintiff Zel Norman's Opposition (#60), filed July 8, 2009, and Defendants' Reply (#62), filed July 22, 2009. Also before the Court is Plaintiff's **Motion to File Late Pleading** (#61), filed July 8, 2009, and Defendants' Opposition (#63), filed July 31, 2009.

**BACKGROUND**

Zel Norman, who is currently incarcerated in Nevada state prison, was arrested by the above-named Defendants on October 15, 2005. While Defendant Gilbert, a Metro officer, waited at a traffic light, he ran the plates of surrounding vehicles, including Norman, who was

1

AO 72
(Rev. 8/82)

stopped in the turn lane next to him. The computer search on Norman's plates revealed an outstanding warrant for Norman's arrest for being a felon in possession of a handgun. Gilbert then pulled behind the vehicle following Norman and turned on his overhead lights. Both Norman and a separate trailing vehicle stopped immediately following the turn. Gilbert then got out of his vehicle and indicated that the trailing vehicle could go on. When Gilbert waived on the trailing car, Norman departed along with the trailing car. Gilbert returned to his police cruiser and began pursuit of Norman. In response, Norman increased the speed of his vehicle, apparently in an attempt to evade Gilbert.

Norman then engaged Gilbert in a high-speed pursuit through residential areas of downtown Las Vegas, driving at speeds in excess of sixty miles per hour. After fleeing for several blocks, Norman eventually abandoned his vehicle in the middle of the road. As Gilbert attempted to pin Norman in his vehicle by blocking the doorway with his police cruiser, Norman exited the vehicle and jumped onto the hood of Gilbert's police cruiser. Norman alleges that this resulted in scrapes to his knees. Norman continued to flee the police on foot. Defendants Ferguson, Sandoval, and Radar, who had been called to the scene as backup, ultimately assisted Gilbert in forcing Norman to the ground and arresting him. Norman alleges that, after the officers tackled him, they willfully punched and kicked him, causing "lacerations to [his] knees, numerous bruises, and abrasions to [his] arms, knees, and body." (Dkt. #60, Opp'n Ex. A.)

On October 17, 2007, Norman filed suit against Defendants under 42 U.S.C. § 1983, alleging federal claims under the Eighth and Fourteenth Amendments as well as state law claims for criminal battery (NRS 200.481(1)(b)), wrongful exercise of official power (NRS 197.180), obstruction of a police officer (NRS 197.190), oppression under color of office (NRS 197.200), and conduct constituting crime (NRS 193.050). In his Amended Complaint (#25), Norman also alleges Metro, by "procedure, practice, or policy," authorized the arresting officers' use of excessive force and conspired to violate his Eighth and Fourteenth Amendment rights. Norman further alleges that Metro, Gilbert, and Shrum falsified police reports and crime scene

evidence in order to indicate that Defendants did not use excessive force when arresting Norman. Norman subsequently moved to dismiss these claims against Metro, Gilbert, and Shrum for falsifying police reports and evidence. Following non-opposition by Defendants, the Court granted Norman's Motion.

On April 24, 2009, Defendants moved for summary judgment on Norman's remaining claims. On May 14, 2009, Norman requested that the Court grant him additional time to prepare an opposition to Defendants' Motion for Summary Judgment. The Court granted this motion and ordered Norman to submit his opposition by June 12, 2009. On June 15, 2009, after his opposition was already due, Norman filed a second Motion for Extension of Time. In its Order, dated June 17, 2009, the Court gave Norman an additional fourteen days to file an opposition but noted that there would "be no more extensions." (Dkt. #59, Order 1–2.) On July 8, 2009, seven days past the deadline to file his Opposition, Norman submitted a Motion to File Late Pleading (#61) and his Opposition (#60). For the reasons discussed below, the Court denies Norman's Motion to File Late Pleading, but accepts his late Opposition.  Furthermore, the Court grants Defendants' Motion for Summary Judgment.

**DISCUSSION**

**I.      Motion to File Late Pleading**

Norman's Motion to File Late Pleading and his Opposition were filed seven days after the Opposition was due. The Court denies Norman's Motion to File a Late Pleading because it made clear that no more extensions would be given. Nonetheless, in its discretion and in the interests of justice, the Court accepts Norman's late opposition.

**II.     Motion for Summary Judgment**

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder

AO 72
(Rev. 8/82)

1  could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the
2  suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In
3  evaluating a motion, a court views all facts and draws all inferences in the light most favorable to
4  the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).
5        The movant bears the burden of showing that there are no genuine issues of
6  material fact. *Id.* "In order to carry its burden of production, the moving party must either produce
7  evidence negating an essential element of the nonmoving party's claim or defense or show that the
8  nonmoving party does not have enough evidence of an essential element to carry its ultimate
9  burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
10 (9th Cir. 2000). Once the movant satisfies the requirements of Rule 56, the burden shifts to the
11 party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."
12 *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving
13 party "may not rely on denials in the pleadings but must produce specific evidence, through
14 affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps.,*
15 *Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some
16 metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.
17 574, 586 (1986).
18       The Court also notes the well-established rule that *pro se* complaints are subject to
19 "less stringent standards than formal pleadings drafted by lawyers" and should be "liberally
20 construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). This is particularly true
21 in civil rights cases. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988)
22 (holding that courts must afford *pro se* plaintiffs "the benefit of any doubt").
23     **A.**    **Defendant Shrum**
24       As indicated previously, the Court granted Norman's Motion to Dismiss his claims
25 of falsifying police reports and evidence against Shrum, Gilbert, and Metro. In his Amended
26 Complaint, Norman names Defendant Shrum only insofar as she allegedly participated in the

falsifying of evidence and police reports. Because these claims have been dismissed, Shrum is no longer a named defendant in this lawsuit. For this reason, the Court grants Defendants' Motion for Summary Judgment as to Defendant Shrum, and it dismisses Shrum from this case.

### B.   Las Vegas Metropolitan Police Department

Norman alleges that Metro authorized the use of excessive force as a matter of procedure, practice or policy and that it conspired to violate his Constitutional rights. 42 U.S.C. § 1983 states:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the [injured] party.

The U.S. Supreme Court has held that municipalities are a "person" for purposes of liability under § 1983. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 (1978). Nonetheless, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. Neither can a municipality be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691.

Instead, municipalities are liable under § 1983 when their employees or agents act (1) under color of state law; (2) according to a policy or custom of the municipality; (3) amounting to deliberate indifference to the Plaintiff's rights; and (4) resulting from such policy, which was in fact "the moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)); *Monell*, 436 U.S. at 694. The Ninth Circuit has also held that a "plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (citing *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989)), *abrogated on other grounds by Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008).

/

Norman alleges in his Complaint that Metro violated his constitutional rights pursuant to procedure, practice or policy. However, Norman's § 1983 claim against Metro stems from a theory of *respondeat superior*, as he revealed during his deposition:

> Q: Why are you anticipating suing the police department itself as an entity?
>
> A: Because that's who they work for.
>
> Q: You only have a belief that the police department is responsible because it employs the officers?
>
> A: That's their employer.
>
> Q: So what we call in the law respondeat superior, that you're responsible for your employees' actions?
>
> A: Yes.
>
> Q: You don't have any other facts which you believe make the police department [sic] an entity liable other than the fact they employed the officers, correct?
>
> A: At this point, yes.
>
> Q: You're not aware of any policy of practice or scheme of the department to deprive people of their constitutional rights?
>
> A: I'm not aware of it.

(Dkt. #54, Mot. Ex. A, 44–45.)

Norman's claim fails because a municipality cannot be held liable under a theory of *respondeat superior*. Additionally, Norman himself states he has no knowledge of any policy, practice, or scheme which would establish liability under § 1983. Without any such information, Norman is unable to support his § 1983 claim as against Metro. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Metro and dismisses Metro from this case.

**C.     State law claims**

Norman alleges state law claims for criminal battery (NRS 200.481(1)(b)), wrongful exercise of official power (NRS 197.180), obstruction of a police officer (NRS 197.190), oppression under color of office (NRS 197.200), and conduct constituting crime (NRS 193.050).

1    These claims all fail because "[c]riminal statutes cannot be enforced by civil action." *Collins v.*
2    *Palczewski*, 841 F. Supp. 333, 340 (D. Nev. 1993) (citing *U.S. v. Cliffin*, 97 U.S. 546 (1978)).
3    Because Norman is not entitled to relief in a civil action under these statutes, the Court grants
4    Defendants' Motion for Summary Judgment on all of Norman's state law claims.

5          **D.**    **Eighth Amendment**

6          Norman alleges Defendants violated his right to be free from cruel and unusual
7    punishment when they arrested him. Norman's Eighth Amendment claim fails, however, because it
8    does not apply to Norman's case, as the alleged action occurred before he was convicted of any
9    crime. *See Elliott v. City of Union City*, 916 F.2d 716 (9th Cir. 1990); *U.S. v. Lovett*, 328 U.S. 303,
10   317–18 (1946) (punishment by State is not an Eighth Amendment concern until after State has
11   secured a formal adjudication of guilt in accordance with due process of law). Thus, the Court
12   grants Defendants' Motion for Summary Judgment as to Norman's Eighth Amendment claim.

13         **E.**    **Fourteenth Amendment**

14         Norman also alleges Defendants violated his substantive due process rights under
15   the Fourteenth Amendment. This claim fails as a matter of law. The United States Supreme Court
16   has held that claims involving the alleged use of excessive force while making an arrest "are
17   properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than
18   under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Thus, the
19   Court grants Defendants' Motion for Summary Judgment on this claim.

20         **F.**    **Fourth Amendment**

21         Although Norman does not allege a Fourth Amendment violation, it is clear from
22   the Amended Complaint that Norman claims Defendants used unreasonable force when arresting
23   him. Because Norman is a *pro se* plaintiff, the Court reads a Fourth Amendment claim into his
24   Amended Complaint.

25         When determining whether the use of force during an arrest is reasonable, courts are
26   to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment

AO 72
(Rev. 8/82)

interests against the countervailing government interests at stake." *Id.* at 396. This analysis requires an examination of the following factors set forth in *Graham*: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* In conducting this analysis, the Court considers (1) whether the *Graham* factors weigh in favor the officers' use of force, and (2) whether the officers' use of force was reasonable in light of the *Graham* factors.

### 1. *Graham* factors

#### a. Severity of the crime at issue

This case involves the commission of two crimes: the crime for which Gilbert initially stopped Norman and the crime Norman committed when he evaded arrest. In light of these crimes, the arresting officers were justified in using force to arrest Norman. First, the officers knew that the owner of the vehicle had an outstanding warrant for his arrest for unlawful possession of a firearm. Based on this information, Gilbert, and the other officers who arrived at the scene, had reason to believe that Norman might have been armed. Second, "[t]he severity of the crimes [sic] of driving at high speeds through residential areas cannot be understated." *Skylstad v. Reynolds*, 248 Fed. Appx. 808, 811 (9th Cir. 2007). Gilbert pursued Norman for several minutes through residential areas of downtown Las Vegas, driving at speeds exceeding sixty miles per hour in the opposite direction of traffic. Given the seriousness of these offenses, the Court finds it was reasonable for Defendants to use force in arresting Norman.

#### b. Threat to the safety of officers or the public

In this case, Norman initiated a high-speed chase through the heart of Las Vegas, driving over sixty miles per hour through residential areas. This behavior, by itself, posed a significant threat of harm to the public. Upon exiting his vehicle, Norman jumped over Gilbert's car, continuing to flee on foot. Knowing that the suspect's plates had an outstanding warrant on federal weapons charges, Gilbert had reason to believe Norman posed an immediate threat to both

himself and the public. In such instance, the officers had a heightened interest in apprehending the suspect. Thus, it was reasonable for Defendants Gilbert, Ferguson, Sandoval, and Radar to use increased force to arrest Norman.

### c.     Resisting arrest or evasion by flight

The Ninth Circuit has indicated that police are entitled to use force when arresting a person who flees from police authority. *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994). Here, Norman clearly attempted to avoid arrest by engaging the police in a dangerous automobile pursuit and in a potentially dangerous foot pursuit. Norman does not dispute this fact. (*See* Dkt. #54, Mot. Ex. A 16–17.)  Thus, this factor also weighs in favor of finding that Defendants were justified in exercising force when arresting Norman.

### 2.     Reasonable Use of Force

Having determined that the *Graham* factors weigh in favor of permitting Defendants to use force to arrest Norman, the Court now addresses whether Defendants are entitled to summary judgment on Norman's Fourth Amendment claim. The Court notes that Norman claims the officers tackled, punched, and kicked him, causing "lacerations to [his] knees and numerous bruises and abrasions to [his] arms, knees and body." (Dkt. #60, Opp'n 11–12.) Defendants deny kicking and punching Norman and claim that they used the minimum necessary force to make the arrest. This testimony essentially pits the arresting officers' word against the word of the Plaintiff. This factual dispute, however, is not fatal to Defendants' Motion because other important and undisputed facts, taken in light of the *Graham* factors, justify granting summary judgment in this case.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court finds summary judgment is appropriate in this case because while Norman claims he suffered back and neck injuries as a result of his arrest, he has produced no

AO 72
(Rev. 8/82)

1  evidence to support this assertion. In fact, the evidence before the Court directly contradicts
2  Norman's testimony and supports the testimonies of Defendants. The record indicates that Norman
3  sustained only minor scratches to his knees (either from falling off of Gilbert's hood or else from
4  the process of his arrest) and that such scratches were tended to by paramedics, who evaluated
5  Norman at the time of his arrest and determined that additional medical treatment was unnecessary.
6  *See* "Use of Force Report" (Dkt. #54, Mot. Ex. B-2 2); *see also* "Declaration of Arrest" (*Id.* at Ex.
7  B.) Furthermore, Norman alleges that Defendants' excessive use of force resulted in bruises and
8  abrasions all over his body. The evidence, however, does not support this allegation: the
9  paramedics' report indicates only that Norman had scratches on his knees, and it does not indicate
10  that Norman complained of being kicked or punched all over his body.
11  Thus, although Norman insists he was seriously injured as a result of his arrest, the
12  facts on record show that he sustained only minor abrasions to his knees. The Court finds that
13  under these circumstances, no reasonable juror could conclude that Defendants used excessive
14  force or acted unreasonably. Norman, who was wanted on federal weapons charges, led the police
15  on a dangerous, high-speed chase through a busy street in Las Vegas and subsequently attempted to
16  evade the police on foot. The fact that Norman suffered nothing more than scrapes on his knees
17  after having evaded arrest in such a reckless manner is fatal to his Fourth Amendment claim. The
18  Court therefore finds, as a matter of law, that the police acted reasonably when using force to arrest
19  and subdue Norman. Accordingly, the Court grants Defendants' Motion for Summary Judgment
20  on Norman's Fourth Amendment claim.

**CONCLUSION**

22  Accordingly, and for good cause appearing,
23  IT IS HEREBY ORDERED that Plaintiff's Motion to File Late Pleading (#61) is
24  DENIED as moot.
25  /
26  /

10

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#54) is GRANTED as to all claims.

The Clerk of the Court is ordered to close this case.

Dated: October 13, 2009.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)